# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**JAMES T. ROBERTS,**

    **Petitioner,**

**v.**                                        **Case No. 8:21-cv-2068-TPB-NHA**

**SECRETARY, DEPARTMENT
OF CORRECTIONS,**

    **Respondent.**
_____/

## ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

James T. Roberts, a Florida prisoner, timely filed a second amended petition for writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 9). Having considered the petition, Respondent's response in opposition (Doc. 12), and Roberts's reply (Doc. 19), the Court **DENIES** the petition.

## Background

This case arises from traumatic brain injuries suffered by J.R., Roberts's biological child, when J.R. was three months old. In June 2013, Roberts lived in Winter Haven, Florida, with J.R. and Stephanie Cunningham, J.R.'s biological mother. (Doc. 13-2, Ex. 3, at 193). Around 1:00 p.m. on June 14, Cunningham left for work, leaving J.R. alone with Roberts. (*Id.* at 194). At the time, J.R. was "normal" and "happy." (*Id.*)

1

Around 3:00 p.m., Cunningham returned a missed call from Roberts. (*Id.* at 195). Roberts said that J.R. had "rolled off the couch" onto the tile floor. (*Id.*) The seat of the couch was seventeen inches off the ground. (*Id.* at 250). Cunningham asked whether J.R. needed to go to the hospital. (*Id.* at 195-96). Roberts said "no" and claimed that J.R. "was no longer crying." (*Id.* at 196). Cunningham got home from work around 1:00 a.m. and played with J.R. for approximately thirty minutes. (*Id.*) According to Cunningham, J.R. seemed "normal" at the time. (*Id.*)

Cunningham went to sleep and awoke at around 5:00 a.m. to get ready for work. (*Id.* at 197). She noticed that J.R. "didn't cry when he woke up[;] he just stayed there in his bed." (*Id.*) This was "abnormal" for J.R. (*Id.* at 198). Later that morning, Roberts drove Cunningham to work. (*Id.*) J.R. sat in the back seat with Cunningham as she fed him his bottle. (*Id.*) J.R. "threw up more than half of his bottle" during the car ride. (*Id.*) Again, this behavior was "abnormal." (*Id.*)

Shortly after Roberts dropped Cunningham off, the car broke down. (*Id.*) Sarah Siaca, Cunningham's aunt, retrieved Roberts and J.R. from "the side of the road." (*Id.* at 266). Siaca drove them to a house she shared with her husband, her son, Cunningham's grandfather, and Cunningham's other aunt. (*Id.* at 266, 272).

2

Cunningham's aunts quickly noticed that J.R. was "not himself." (*Id.* at 278). He was "lethargic" and did not "acknowledge anything around him"—"the cats, people, anything of that nature." (*Id.*) As the day went on, J.R.'s condition worsened. (*Id.* at 267). He began to "drool[] a lot more," and he "projectile vomited" while lying on the couch. (*Id.* at 267-68). One of the aunts asked Roberts about J.R.'s drooling. (*Id.* at 268). He said that J.R. was "teething." (*Id.*) Throughout the day, neither of Cunningham's aunts observed anyone shake, hit, drop, or roughly handle J.R. (*Id.* at 271, 273-74, 280-81).

Around 1:00 a.m., Cunningham arrived at her relatives' house. (*Id.* at 201). She picked up J.R. and noticed that "his eyes weren't focusing on [her]." (*Id.*) Indeed, he appeared to have "no control over his eyes." (*Id.*) Soon after, J.R.'s "whole right side" began "shaking." (*Id.* at 202). At this point, Cunningham and Roberts took J.R. to the hospital. (*Id.*)

Tests revealed that J.R. had (1) a depressed parietal skull fracture, (2) "multiple areas" of acute subdural hematomas (*i.e.*, bleeding in the brain), (3) retinal bleeding in both eyes, and (4) swelling of the brain. (*Id.* at 288, 302, 304-05, 357). J.R. was also suffering from seizures, which were caused by a blockage in "the middle cerebral artery." (*Id.* at 373-74). An infant with these injuries would typically show, within twenty-four hours, a "decreased level of alertness," drowsiness, vomiting, and "issues with coordination." (*Id.* at 305).

3

Three medical professionals evaluated J.R. at the hospital—a second-year medical resident, a pediatric nurse practitioner, and a pediatric neurologist. (*Id.* at 285, 287, 325, 329-30, 368-70). All three testified at trial that J.R.'s injuries were not consistent with rolling off a couch and falling one-and-a-half feet onto tile floor. (*Id.* at 307, 356, 383-84). The neurologist opined that the "combination" of J.R.'s injuries—"skull fracture, subdural hemorrhages, retinal hemorrhages[,] and stroke"—"strongly suggest[ed] repeated blows of the head into a soft pillow or a soft bed." (*Id.* at 374-75). Likewise, the nurse practitioner testified that J.R.'s injuries resulted from "[n]on-accidental trauma" to the head. (*Id.* at 356).

Shortly after J.R. arrived at the hospital, law enforcement interviewed Roberts. He claimed that on June 14, he was home alone with J.R. (*Id.* at 214). According to Roberts, he left the baby on the couch while he used the bathroom. (*Id.*) Several minutes later, Roberts allegedly heard J.R. crying, returned to the living room, and picked the baby up from the tile floor. (*Id.* at 214-15). Roberts told the police that J.R. seemed "normal" until the next morning, when Cunningham's aunt "noticed the child was acting lethargic." (*Id.* at 216, 218). Roberts denied hitting, dropping, or shaking J.R. (*Id.* at 221-22).

Roberts was ultimately charged with neglect of a child causing great bodily harm and aggravated child abuse causing great bodily harm. (*Id.*, Ex.

4

2). The case went to a jury trial. At the time of trial, J.R. was four years old. He "still suffer[ed] from seizures," had "a lazy eye caused [by] hemorrhages from behind his eyes," and was on medication for "seizures" and "ADHD." (*Id.*, Ex. 3, at 203-04). Roberts's primary defense was that J.R.'s injuries resulted from an "accident," and that there was "absolutely no evidence that [he] did something willfully, intentionally to cause great bodily harm to" J.R. (*Id.* at 442-43). Roberts also argued that there was no evidence that "taking [J.R.] to the hospital sooner rather than later would have done anything." (*Id.* at 441).

The jury convicted Roberts of (1) the lesser included offense of child neglect and (2) aggravated child abuse causing great bodily harm. (*Id.*, Ex. 4). Because he committed these offenses within three years of his release from prison on prior child-abuse charges, Roberts qualified as a prison releasee reoffender. (*Id.*, Ex. 5, at 7; *see also State v. Roberts*, No. 2010-CF-1722 (Fla. 10th Jud. Cir. Ct.)). In accordance with that designation, he received a mandatory thirty-year sentence on the aggravated-child-abuse count, to run concurrently with a five-year sentence on the child-neglect count. (Doc. 13-2, Ex. 5).

Roberts appealed his convictions, and the state appellate court affirmed without an opinion. (*Id.*, Exs. 6, 11). He then moved for postconviction relief under Florida Rule of Criminal Procedure 3.850. (*Id.*, Ex. 13). The state

postconviction court denied relief without holding an evidentiary hearing, and the state appellate court affirmed without an opinion. (*Id.*, Exs. 15, 19). This federal habeas petition followed. (Docs. 1, 4, 9).

## Standards of Review

**AEDPA**

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief can be granted only if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A decision involves an "unreasonable

application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694; *see also Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement.").

The state appellate court affirmed Roberts's convictions, as well as the denial of postconviction relief, without discussion. These decisions warrant deference under § 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir. 2002). When a state appellate court issues a silent affirmance, "the federal court should 'look through' the unexplained decision

to the last related state-court decision that does provide a relevant rationale"
and "presume that the unexplained decision adopted the same reasoning."
*Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

**Ineffective Assistance of Counsel**

Roberts alleges ineffective assistance of trial counsel. Ineffective-
assistance-of-counsel claims are analyzed under the test established in
*Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a showing
of deficient performance by counsel and resulting prejudice. *Id.* at 687.
Deficient performance is established if, "in light of all the circumstances, the
identified acts or omissions [of counsel] were outside the wide range of
professionally competent assistance." *Id.* at 690. However, "counsel is
strongly presumed to have rendered adequate assistance and made all
significant decisions in the exercise of reasonable professional judgment." *Id.*

Roberts must show that counsel's alleged error prejudiced the defense
because "[a]n error by counsel, even if professionally unreasonable, does not
warrant setting aside the judgment of a criminal proceeding if the error had
no effect on the judgment." *Id.* at 691. To demonstrate prejudice, Roberts
must show "a reasonable probability that, but for counsel's unprofessional
errors, the result of the proceeding would have been different. A reasonable
probability is a probability sufficient to undermine confidence in the
outcome." *Id.* at 694.

Obtaining relief on a claim of ineffective assistance of counsel is difficult on federal habeas review because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (internal quotation marks and citations omitted). "The question [on federal habeas review of an ineffective assistance claim] 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

**Exhaustion of State Remedies; Procedural Default**

A federal habeas petitioner must exhaust his claims by raising them in state court before presenting them in his petition. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). The exhaustion requirement is satisfied if the petitioner fairly presents his claim in each appropriate state court and alerts that court to the federal nature of the claim. *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a

9

procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001); *see also Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998) (stating that unexhausted claims that "would be procedurally barred in state court due to a state-law procedural default" provide no basis for federal habeas relief).

A petitioner shows cause for a procedural default when he demonstrates "that some objective factor external to the defense impeded the effort to raise the claim properly in the state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). A petitioner demonstrates prejudice by showing that "there is at least a reasonable probability that the result of the proceeding would have been different" absent the constitutional violation. *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003). "A 'fundamental miscarriage of justice' occurs in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent." *Id.*

## Discussion

### Ground One

Roberts contends that trial counsel was ineffective for failing to retain an expert witness to "support [his] defense." (Doc. 9 at 9). According to Roberts, an expert could have testified that (1) "the shaking of the minor

child or hitting the child against a soft surface would not have caused the injuries that [J.R.] suffered," and (2) "a short fall to a hard surface, like the fall to the tile[] floor in this case, commonly causes skull fractures resulting in the type of severe subdural hematomas and bilateral retinal hemorrhages that [J.R.] suffered here." (*Id.* at 17-18). Roberts argues that retaining such an expert would have allowed counsel to "effectively" cross-examine the State's expert witnesses. (*Id.* at 14-15). He also maintains that the proposed expert testimony would have "given the jury a competent evidentiary basis to find reasonable doubt on the aggravated child abuse charge." (*Id.* at 21-22).

The state postconviction court rejected this claim for the reasons stated in the State's "response," which was "incorporated herein" by reference. (Doc. 13-2, Ex. 15, at 73). The response noted that Roberts failed to establish either deficient performance or prejudice. (*Id.*, Ex. 14, at 47-49). As to prejudice, the response explained that Roberts offered nothing beyond "speculation" to show that "the jury would have reached a different result" had counsel "call[ed] alternative experts for the defense." (*Id.* at 50). Accordingly, Roberts failed to show that retaining an expert witness would have led to "a reasonable probability of a different result" at trial. (*Id.* at 50-51).

The state postconviction court reasonably rejected this claim for lack of prejudice. "The prejudice prong requires the petitioner to establish a reasonable probability that, but for counsel's errors, the outcome at trial

would have been different." *Reed v. Sec'y, Fla. Dep't of Corr.*, 767 F.3d 1252, 1261 (11th Cir. 2014) (internal quotation marks omitted). "It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Instead, "counsel's errors [must be] so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable." *Id.* at 687. "This prejudice burden is heavy where the petitioner alleges ineffective assistance in failing to call a witness because often allegations of what a witness would have testified to are largely speculative." *Sullivan v. DeLoach*, 459 F.3d 1097, 1109 (11th Cir. 2006) (internal quotation marks omitted).

Roberts failed to meet his burden when he presented Ground One to the state postconviction court. In his Rule 3.850 motion, he asserted that counsel "could have easily retained a medical expert to provide testimony that, to a reasonable degree of medical certainty, the injuries that J.R. suffered were caused by or consistent with a fall from the couch to a hard surface." (Doc. 13-2, Ex. 13, at 18). But Roberts did not identify any expert who could have provided such testimony. Nor did he allege that "any [] expert had actually reviewed the evidence in his case." *Finch v. Sec'y, Dep't of Corr.*, 643 F. App'x 848, 852 (11th Cir. 2016). "Without some specificity as to the proposed expert's testimony, any assertion that an expert would testify consistently with [Roberts's] claims [was] mere speculation and [did] not

entitle him to [] relief." *Id.* Thus, the state postconviction court reasonably concluded that Roberts's allegations were too speculative to establish prejudice under *Strickland*. *See, e.g.*, *Jimenez v. Sec'y, Dep't of Corr.*, No. 8:19-cv-684-MSS-AEP, 2021 WL 5416150, at *9 (M.D. Fla. Nov. 19, 2021) ("[I]n his post-conviction motion, [petitioner] neither identified an expert who could have testified [favorably to the defense] nor presented an affidavit or testimony to substantiate that testimony. Because [petitioner's] ineffective assistance of counsel claim was speculative, the state court did not unreasonably deny the claim." (citation omitted)).

Roberts attempts to remedy this evidentiary gap by submitting an affidavit from Dr. Edward Willey, who opines that "[s]hort falls to a hard surface" "commonly cause skull fracture" and "may be very damaging." (Doc. 5-1 at 7). But AEDPA limits this Court's review of state-court adjudications "to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). Dr. Willey's affidavit was never presented to the state court. As a result, this Court cannot consider the affidavit in deciding whether the state postconviction court reasonably rejected Roberts's claim. *See French v. Warden, Wilcox State Prison*, 790 F.3d 1259, 1266 (11th Cir. 2015) ("Under *Pinholster*, our [] review must be conducted on the basis of the record that was before the state habeas court when it adjudicated the merits of [the] ineffective assistance of counsel claims.").

13

In short, Roberts fails to show, "based solely on the state court record," that the state postconviction court acted unreasonably in denying relief. *Landers v. Warden, Atty. Gen. of Ala.*, 776 F.3d 1288, 1295 (11th Cir. 2015). Accordingly, Ground One is denied.[1]

**Ground Two, Sub-Claim A**

Roberts contends that trial counsel was ineffective for failing to "depose two of the experts that the State called to testify at trial"—specifically, the nurse practitioner and the medical resident, both of whom had evaluated J.R. at the hospital. (Doc. 9 at 23-24). According to Roberts, the failure to depose these witnesses—and to "thoroughly consult[] with an expert prior to trial"— meant that counsel was "unprepared" for their trial testimony and unable to "point out deficiencies in the . . . testimony on cross-examination." (*Id.* at 24).

The state postconviction court rejected this claim for the reasons stated in "the State's response." (Doc. 13-2, Ex. 15, at 73). The response explained that Roberts offered "nothing to support any claim of deficiency or prejudice" because he "provide[d] not even a scintilla of support for his claim that

---

[1] Roberts argues that AEDPA deference does not apply to Ground One because the state postconviction court failed "to conduct an evidentiary hearing on the matter." (Doc. 9 at 21). But there is no "per se rule that a state court must conduct an evidentiary hearing to resolve every disputed factual question." *Landers*, 776 F.3d at 1297. No evidentiary hearing was necessary in this case because Roberts's unsupported speculation about the utility of hiring an expert was insufficient to meet his burden under *Strickland*.

[c]ounsel was unprepared for certain witnesses' testimony." (*Id.*, Ex. 14, at 52).

The rejection of this claim was reasonable. A petitioner cannot establish ineffective assistance by making "conclusory allegations unsupported by specifics." *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (internal quotation marks omitted); *see also Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992) (same). In his Rule 3.850 motion, Roberts alleged that because counsel failed to depose two of the State's experts, he "was unprepared for their testimony" at trial. (Doc. 13-2, Ex. 13, at 20). But Roberts "point[ed] to no specific instance in which counsel was surprised by a witness's testimony or failed to perform an effective cross-examination." *Bogan v. Thompson*, 365 F. App'x 155, 157 (11th Cir. 2010). Nor did he identify any questions that counsel should have asked of the State's experts. Thus, "the claim as presented in state court was conclusory, and insufficient to state a Sixth Amendment ineffective-assistance-of-counsel claim." *Moore v. Crews*, No. 16-11675-H, 2017 WL 7085622, at *4 (11th Cir. Oct. 24, 2017); *see also United States v. Castleman*, No. 3:08-cr-22-LAC-CJK, 2017 WL 1234145, at *10 (N.D. Fla. Feb. 10, 2017) ("Defendant's related assertion [that] counsel generally failed to make a 'whole host of objections' or take advantage of 'impeachment opportunities' is too vague to satisfy *Strickland*."), *adopted by* 2017 WL 1234141 (N.D. Fla. Apr. 3, 2017).

15

In his federal habeas petition, Roberts attempts to supplement the claim he presented to the state court. For the first time, he alleges (among other things) that counsel could have brought out on cross-examination "that short falls to hard surfaces, such as the tile[] floor here, can be very damaging and even fatal." (Doc. 9 at 24). These new allegations cannot be considered on federal habeas review. "[A] review of a state court adjudication on the merits in light of allegations not presented to the state court—for example, by examining additional facts or claims presented for the first time in a petitioner's federal habeas petition—would insufficiently respect the historic and still vital relation of mutual respect and common purpose existing between the States and the federal courts." *Borden v. Allen*, 646 F.3d 785, 816 (11th Cir. 2011) (internal quotation marks omitted). Accordingly, this Court "do[es] not consider [Roberts's] supplemental allegations . . . when reviewing the reasonableness of the state court's resolution of this claim, which was based on the allegations before it." *Powell v. Allen*, 602 F.3d 1263, 1273 n.8 (11th Cir. 2010).

Because the state postconviction court reasonably rejected Roberts's ineffective-assistance claim based on the allegations before it, Ground Two, Sub-Claim A is denied.[2]

---

[2] Roberts contends that counsel's "lack of preparedness contributed to [] counsel's failure to understand the critical need to retain an expert witness for the defense." (Doc. 9 at 24).

**Ground Two, Sub-Claim B**

Roberts argues that trial counsel was ineffective for failing to depose unidentified "fact witnesses," who allegedly "would have informed [counsel] of possible alternative defenses." (Doc. 9 at 23). This claim is unexhausted because Roberts never raised it in state court. "[T]he prohibition against raising nonexhausted claims in federal court extends not only to broad legal theories of relief, but also to the specific assertions of fact that might support relief." *Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004). This means that "habeas petitioners may not present particular factual instances of ineffective assistance of counsel in their federal petitions that were not first presented to the state courts." *Id.*

In his Rule 3.850 motion, Roberts broadly asserted that "trial counsel was ineffective for failing to investigate and properly prepare for trial." (Doc. 13-2, Ex. 13, at 19). But he did not raise the "particular factual instance[] of ineffective assistance" underlying this claim—namely, that counsel was deficient for failing to depose certain fact witnesses. *Kelley*, 377 F.3d at 1344. The state postconviction court "never had the opportunity to decide" that

---

That claim fails for the same reasons as Ground One—namely, that Roberts failed to present the state court with sufficient evidence that an expert would have been helpful to the defense. Roberts separately argues that AEDPA deference does not apply to Ground Two, Sub-Claim A because the state postconviction court declined to hold an evidentiary hearing. (*Id.* at 26). But no hearing was necessary in this case because Roberts's Rule 3.850 motion offered nothing more than "conclusory allegations unsupported by specifics." *Tejada*, 941 F.2d at 1559.

claim because Roberts "raised [it] for the first time in federal court."

*Greenwood v. Sec'y, Dep't of Corr.*, 794 F. App'x 831, 834 (11th Cir. 2019).

Roberts cannot return to state court to present his unexhausted claim in a second, untimely postconviction motion. *See* Fla. R. Crim. P. 3.850(b) (imposing two-year window of time to file motion for postconviction relief). As a result, this claim is procedurally defaulted. *See Smith*, 256 F.3d at 1138 ("If the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established."). And because Roberts has not shown that an exception applies to overcome the default, the claim is barred from federal habeas review. Accordingly, Ground Two, Sub-Claim B is denied.

**Ground Three**

Finally, Roberts argues that trial counsel was ineffective for failing to argue to the jury that "other persons were in the presence of the minor child, J.R., who could have caused the minor child's injury or who could have exacerbated any injury the minor child might have suffered from falling off the couch to the tile[] floor." (Doc. 9 at 29). According to Roberts, this "viable defense" "would have created reasonable doubt in the minds of the jurors as to the State's theory." (*Id.* at 29, 31).

The state postconviction court rejected this claim for the reasons stated in "the State's response." (Doc. 13-2, Ex. 15, at 73). In its response, the State noted that "[t]here was no testimony from any witness that anyone [other than Roberts] did anything to [J.R.] that could have injured him or exacerbated his injuries." (*Id.*, Ex. 14, at 54). Thus, Roberts's "theory did not present a viable strategy because it was based entirely on speculation and conjecture." (*Id.* at 55). For the same reason, "[t]here [was] no reasonable basis to expect that this strategy would have led to a different result." (*Id.*) As a result, "nothing . . . show[ed] counsel [was] deficient or that [Roberts] was prejudiced by his representation." (*Id.*)

That conclusion was reasonable. A strategic decision by counsel "will be held to have been ineffective assistance only if it was so patently unreasonable that no competent attorney would have chosen it." *Dingle v. Sec'y for Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007). "Because *Strickland* allows for a range of strategic choices by trial counsel, so too is there considerable leeway for state courts to determine the reasonableness of those choices." *Franks v. GDCP Warden*, 975 F.3d 1165, 1176 (11th Cir. 2020). Accordingly, to prevail on his ineffective-assistance claim, Roberts "would have to show that no reasonable jurist could find that his counsel's performance fell within the wide range of reasonable professional conduct." *Id.*

19

Roberts fails to overcome the "doubly deferential" standard of review required by *Strickland* and AEDPA. *Pinholster*, 563 U.S. at 190. A reasonable jurist could conclude that counsel was not deficient for failing to argue that "other persons [who] were in the presence of" J.R. could have caused or exacerbated his injuries. (Doc. 9 at 29). As an initial matter, the proposed defense was weak. J.R. spent time with his relatives on June 15, the day after he allegedly fell off the couch. But Cunningham's aunts testified that they did not observe anyone shake, hit, drop, or roughly handle J.R. on June 15. (Doc. 13-2, Ex. 3, at 271, 273-74, 280-81). Nothing in the record contradicts that testimony. Moreover, J.R. began displaying symptoms associated with his injuries—specifically, vomiting and decreased alertness— *before* he arrived at his relatives' house. (*Id.* at 198). Roberts speculates that those symptoms could have been caused by "rolling from the couch," but he cites no evidence from the trial record to support that assertion. (Doc. 9 at 30). A competent attorney could have chosen to forgo such a weak defense. *See Knowles*, 556 U.S. at 123 ("[The Supreme] Court has never required defense counsel to pursue every claim or defense, regardless of its merit, viability, or realistic chance for success.").

And even if the defense were viable, "*Strickland* permits attorneys to choose between viable avenues of defense." *LeCroy v. United States*, 739 F.3d 1297, 1313 (11th Cir. 2014). Thus, "attorneys are not ineffective for making a

reasonable choice to take one avenue to the exclusion of another, or for selecting a reasonable course without considering some other, equally reasonable course." *Id.* Here, counsel argued that J.R.'s injuries resulted from an "accident," and that there was "absolutely no evidence that [Roberts] did something willfully, intentionally to cause great bodily harm to" J.R. (Doc. 13-2, Ex. 3, at 442-43). A reasonable jurist could conclude that this defense strategy "fell within the wide range of reasonable professional conduct." *Franks*, 975 F.3d at 1176. There was no direct evidence that Roberts had intentionally struck or shaken J.R. And while the circumstantial evidence against Roberts was strong, counsel "had a basis to argue that a sufficient link could not be forged between [him] and the crime." *Johnson v. Alabama*, 256 F.3d 1156, 1180 (11th Cir. 2001).

Lastly, given the weakness of Roberts's proposed defense, a reasonable jurist could conclude that he was not prejudiced by counsel's failure to pursue it at trial. *See Reed*, 767 F.3d at 1261 ("The prejudice prong requires the petitioner to establish a reasonable probability that, but for counsel's errors, the outcome at trial would have been different." (internal quotation marks omitted)).

For all of these reasons, the state postconviction court reasonably rejected Roberts's ineffective-assistance claim. Accordingly, Ground Three is denied.[3]

### Conclusion

Accordingly, it is **ORDERED** that Roberts's second amended petition (Doc. 9) is **DENIED**. The **CLERK** is directed to enter judgment against Roberts and to **CLOSE** this case.

It is further **ORDERED** that Roberts is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a court must first issue a certificate of appealability. To obtain a certificate of appealability, Roberts must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Roberts has not made the requisite showing. Accordingly, a certificate of appealability is **DENIED**. Leave to

---

[3] Roberts seeks an evidentiary hearing on his claims. The Court concludes that an evidentiary hearing is not warranted. *See Schriro*, 550 U.S. at 474 (stating that "if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing"); *Landers*, 776 F.3d at 1295 ("[B]efore a habeas petitioner may be entitled to a federal evidentiary hearing on a claim that has been adjudicated by the state court, he must demonstrate a clearly established federal-law error or an unreasonable determination of fact on the part of the state court, based solely on the state court record.").

appeal *in forma pauperis* is **DENIED**. Roberts must obtain permission from the circuit court to appeal *in forma pauperis*.

**DONE and ORDERED** in Tampa, Florida, this 23rd day of April, 2024.

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**